# OSCAR BERNARD WOLD v. STATE MUTUAL LIFE ASSURANCE COMPANY OF WORCESTER, MASSACHUSETTS.[1]

December 11, 1936.

No. 31,052.

[1]Reported in 270 N. W. 150.

452

*Snyder, Gale & Richards,* for appellant.
*Oscar G. Haugland,* for respondent.

JULIUS J. OLSON, JUSTICE.

Plaintiff's motion for judgment on the pleadings was granted. Defendant's motion for a new trial was denied, and it appeals.

The following facts are concededly established: On September 20, 1921, defendant, in consideration of $45.06 and a like sum to be paid annually thereafter, issued and delivered to plaintiff its policy of insurance upon his life in the amount of $2,000, payable at his death. The policy also contained the following provision:

"Total and Permanent Disability Benefit Provision.

"If the insured hereunder, after the payment of one full year's premium on this policy, and while no premium hereunder is in default, shall furnish due proof that  *  *  *  because of accident or disease he has become wholly, continuously and permanently unable to pursue any gainful occupation and presumably for life will be unable to perform any work, mental or manual, or engage in any business for compensation or profit, and that such disability, or the cause thereof, was sustained or contracted after the date hereof, the Company will  *  *  *  waive the payment of all premiums becoming due under this policy after the expiration of the then current policy year, and pay the insured one percent of the face amount of this policy  *  *  *  and a like amount each month thereafter during the continuance of said total disability of the insured prior to the maturity of this policy.

"The first of said payments shall be made six months after the receipt of such proof of said disability, and then only if it shall appear that the insured is still totally, permanently and incurably disabled as defined above. During said period of six months, any medical examiner, or other accredited representative of the Com-

pany, shall be permitted to examine the person of the insured in respect of the alleged disability, at such time and in such manner as the Company may desire.

"By the acceptance of this contract the insured agrees that, after the said payments become payable as above described, any medical examiner appointed by the Company shall be allowed from time to time to satisfy himself of the continuance of such disability by the examination of the person of the insured, and if it is established that the insured has recovered so as to be able to again engage in some gainful occupation, or has so engaged, or if the insured refuses to permit such examination by a medical examiner, no further premiums will be waived, and no further payments under this' provision will be made by the Company.

"The disability payments made and the premiums waived under this provision will not reduce the amount payable under this policy at maturity, either as an endowment or as a death claim, or affect the distribution of surplus as provided in this policy. The values provided under 'Non-Forfeiture Provisions' shall continue with the same force and effect as if the premiums hereunder were duly paid."

And the further provision:

"This policy shall be incontestable after one year from the date of its issue except for nonpayment of premiums."

Shortly prior to April 30, 1925, plaintiff then having reached the age of 31 years and having paid four full annual premiums, there being no default whatever, furnished to defendant proof that he had become wholly, continuously, and permanently unable to pursue any occupation because he had become afflicted with tuberculosis; that by reason of such affliction, presumably for life, he would be unable to perform any work, mental or manual, or engage in any business for compensation or profit, "and that such disability or the cause thereof was sustained or contracted after said September 20, 1921."

Ever since April 30, 1925, and until and including March 30, 1934, defendant duly paid to plaintiff $20 per month in accordance with the quoted language of the permanent disability provision.

On April 14, 1934, defendant informed plaintiff that it would no longer pay this or any other sum per month. Since the last mentioned payment defendant has refused to pay the monthly instalment. Plaintiff sought recovery for such instalments as had matured as and when the case was to be heard.

The only issue of fact, if such there be, arises by virtue of the following allegations of defendant's amended answer:

"II. Admits the allegations contained in paragraph V of said complaint, excepting that defendant expressly denies that plaintiff has at any time furnished to defendant proof that the cause of his disability was sustained or contracted after September 20, 1921; that copies of the proofs furnished defendant by plaintiff in support of plaintiff's claim for disability benefits under said policy are hereunto attached and identified as Exhibits A, B and C, and hereby made part of this amended answer. * * *

"IV. Admits that for the period commencing April 30, 1925, and ending April 30, 1934, defendant has paid plaintiff the sum of twenty dollars ($20.00) on the 30th day of each month as and for total and permanent disability benefits under its policy described in said complaint.

"V. Admits that on April 14, 1934, defendant notified plaintiff that it had terminated plaintiff's claim for disability benefits under said policy, and that it then had in its possession evidence that the cause of plaintiff's disability was sustained or contracted prior to September 20, 1921, and that such being the case no further disability benefits on account of said disability were payable to plaintiff; that in fact no further disability benefits have been paid plaintiff since April 30, 1934.

"VI. Alleges that the cause of said disability was sustained or contracted by plaintiff before September 20, 1921, which is the date of said policy; that defendant had no knowledge or notice of such last mentioned fact until on or about April 14, 1934; that defendant in making disability payments to plaintiff as hereinbefore admitted, believed that the cause of said disability was first sustained and contracted by plaintiff after said date of said policy."

The exhibits to which defendant refers in the first quoted paragraph of its answer are these: Exhibit A is the claimant's statement, duly verified, showing his name, date of birth, and residence; that his illness began the first part of October, 1924; that his application for disability benefits was based upon pulmonary tuberculosis and tuberculosis laryngitis; that his disability became total December 22, 1924, and that he has been so disabled continuously since that time. His incapacity is presumably permanent. His previous occupation over a period of 12 years was clerical, and his employer Pillsbury Flour Mills Company of Minneapolis. He gave the name of his physician, Dr. Robert Williams, Medical Corps at Veterans Bureau, Minneapolis. Permission was given to the company to communicate with any or all of the physicians mentioned by the insured. He also stated that his only other insurance policy was one issued by the United States government.

Exhibit B is the statement of Dr. P. M. Hall, an active practitioner since 1882. He states that he has known claimant only since February 3, 1925, and only as a patient. He first examined claimant February 4, 1925, at the Minnesota State Sanatorium. His diagnosis was: "Pulmonary tuberculosis and tuberculosis laryngitis—State IIIB. Symptoms: Irritation of throat, cough, expectoration, early fatigue and positive sputum." As a result of his examination and investigation he concluded that the insured was totally disabled and incapacitated from engaging in any gainful occupation and that such disability and incapacity presumably will be permanent. The bases for his findings are stated to be "the extent of the involvement and he is confined to bed all the time."

Exhibit C is the statement of Dr. E. G. Ahrens, an active practitioner since 1912. In substance and effect Dr. Ahrens' statement substantiates Dr. Hall's. All exhibits were duly verified.

Plaintiff's right of recovery is based upon the policy provision that "if the insured * * * shall furnish due proof that * * * because of accident or disease he has become" totally and permanently disabled "and that such disability, or the cause thereof, was sustained or contracted after the date" of the policy, the company will waive future premium payments and make the monthly

liability benefit payments hereinbefore mentioned. Obviously, then, the exact terms of the policy provide, as a condition precedent before recovery may be had, that the insured *"shall furnish due proof"* *of his disability*. Later, in the same policy, is the provision that "if it is established that the insured has recovered so as to be able to again engage in some gainful occupation, or has so engaged, or if the insured refuses to permit such examination by a medical examiner, no further premiums will be waived, and no further payments under this provision will be made by the Company."

Here it conclusively appears that "due proof" satisfactory to the insurer was submitted and payments made thereunder over a period of nine years. Defendant, to escape liability thereafter, was by its own policy provisions limited to any or all of three conditions mentioned, *i. e.*, that the insured had recovered; had engaged in some gainful occupation; or had refused to permit an examination of his person by defendant's medical examiner. That none of these conditions exists or has ever existed is not questioned. The pleadings do not raise any issue on this point. Defendant by its own answer shows what proofs were furnished. Its denial now that plaintiff became afflicted with tuberculosis after the policy was issued carries with it the admission that proofs were actually furnished by plaintiff and were accepted and favorably acted upon by defendant. The policy is defendant's own handiwork. It therein said the first payment under this provision was to be made six months after receipt of proof of disability, and that, *"During said period of six months,* any medical examiner, or other accredited representative of the Company, shall be permitted to examine the person of the insured in respect of the alleged disability, at such time and in such manner as the Company may desire." Whether it availed itself of this provision the pleadings do not disclose, but certainly the right and opportunity to do so were open to it. Without question plaintiff's proofs were accepted and the stipulated monthly payments made. It is now too late to "complain of their insufficiency." Jorstad v. Benefit Assn. of Railway Employees, 196 Minn. 568, 571, 265 N. W. 814, 815.

Defendant urges that there can be no estoppel or waiver urged against it. Its claim in that regard is that in order that there be waiver there must be relinquishment of a known right; that in the instant case it did not learn of plaintiff's condition respecting the origin of his tuberculosis ailment until April 14, 1934; hence that there can be neither estoppel nor waiver. If its position be accepted at full face value it necessarily follows that in event plaintiff had died after the date of the last monthly payment made by defendant his beneficiary would have been subjected to the same difficulty in establishing defendant's liability as is plaintiff. Is it possible that such situation may come about under the facts and circumstances here appearing? We think not. The very purpose of furnishing proof of loss in any insurance case is to provide defendant with information from which it may determine its liability. Short v. Great Northern L. Ins. Co. 179 Minn. 19, 23, 228 N. W. 440; 33 C. J. p. 17, § 665. As has been said, proof was duly furnished; defendant by its long continued conduct determined that liability on its part existed. It cannot at this late date, more than 15 years after issuing its policy and more than 10 years after receipt of what it concluded to be adequate proofs of loss, deny liability.

This court in Reliance Motor Co. v. St. Paul F. & M. Ins. Co. 165 Minn. 442, 444, 206 N. W. 655, 656, said:

"The general rule is that there may be an express or an implied waiver of proofs of loss and that a waiver may be inferred from any words or conduct of the insurer's authorized officers or agents evincing an intention on the part of the insurer not to insist on compliance with the requirements of the policy in respect to proofs of loss and calculated to lead the insured to believe that they will not be insisted on."

See also Black v. Central B. M. Assn. 162 Minn. 265, 202 N. W. 823, 825, and cases cited 162 Minn. p. 268; 3 Dunnell, Minn. Dig. (2 ed. & Supp. 1932) § 4789, and cases cited under notes.

We think, too, that the only condition precedent to compel payments on the part of defendant is the policy provision of furnishing due proof. The existence of disability is not the basis for attach-

ing liability upon defendant. It is the furnishing of *due proof* of such disability. Here, as in Bergholm v. Peoria L. Ins. Co. 284 U. S. 489, 491, 52 S. Ct. 230, 231, 76 L. ed. 416, "the obligation of the company does not rest upon the existence of the disability; but it is the receipt by the company of proof of the disability which is definitely made a condition precedent * * *." That case was cited with approval by this court in Floyd M. Andrews, Inc. v. Aetna L. Ins. Co. 198 Minn. 1, 268 N. W. 415. In Kassmir v. Prudential Ins. Co. 191 Minn. 340, 346, 254 N. W. 446, 449, we said, speaking of furnishing proof of disability: "Such notice or proof is not a condition precedent to liability. It is rather and only prerequisite to the right to sue." That was true under the language of that particular policy because there the policy provision was that "if the insured shall become totally and permanently disabled * * * upon receipt of due proof of such disability" liability would attach.

It is of course true that there may be conditions in a policy requiring a holding that the furnishing of proof of disability is only one of the conditions precedent to establishment of liability. In Floyd M. Andrews, Inc. v. Aetna L. Ins. Co. 198 Minn. 1, 2, 268 N. W. 415, that was only one of the requirements. The policy there provided: "If the insured becomes totally and permanently disabled * * * and satisfactory evidence of such disability is received," then liability was to follow. That, however, is not the requirement here. To repeat, the only requirement precedent is: "If the insured hereunder * * * shall furnish due proof that * * * he has become" disabled, then liability is imposed.

The defendant may of course terminate its liability in any of the three ways provided in its contract. It has made its own requirements before plaintiff may recover. Plaintiff did so comply. Defendant conceded such compliance and made the payments heretofore mentioned. Having provided the conditions under and by virtue of which future payments may be terminated, the burden is upon it to show a right so to do. We think Berset v. New York L. Ins. Co. 175 Minn. 210, 220 N. W. 561, furnishes the guide.

Nowhere in these pleadings is there any allegation of fraud, error, omission, or concealment on the part of plaintiff or by anyone else acting for him. Nor is there any suggestion made that defendant has exercised any diligence either within the six-month period provided for before commencing payments, or that it has at any time since these proofs were received made any genuine effort to ascertain the truth. Upon this record we find no difficulty in sustaining the views of the trial court, and the order here for review is therefore affirmed.

Affirmed.

